UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

MICHAEL WEINER,                                    No.: 2:21-cv-4181

        Plaintiff,

                                                   **COMPLAINT**

    -against-

MICHELLE CLARK,

        Defendant.

-----------------------------------------------------------------------X

        Plaintiff Michael Weiner ("Weiner"), by his attorneys, Kriegsman PC, as and for his complaint against Defendant Michelle Clark ("Clark"), alleges, upon knowledge as to himself and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

        1.      Weiner, a landlord, brings this diversity action to recover damages for Clark's breach of the parties' one-year lease agreement.

        2.      After paying rent for five months, Clark stopped paying rent for the remaining seven months, even though she remained bound by the lease.

        3.      Clark owes Weiner $142,915 plus interest and a late charge of $50 and attorney's fees and costs. Weiner brings this action to recover that money.

## JURISDICTION AND VENUE

        4.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

        5.      This Court has personal jurisdiction over Clark because she lives in New York and because this action arises out of conduct that took place in New York.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7. Weiner is a citizen of Florida with a principal address of 720 Pitch Apple Lane, Naples, Florida 34108. Weiner owns the premises located at 100 Trelawney Road in Bridgehampton, New York 11932 (the "Premises").

8. Upon information and belief, Clark is a citizen of New York with a principal address of 116 East 91st Street, New York, New York 10128. Clark is the named lessee on the Premises' lease agreement.

## FACTS

9. On or about February 27, 2020, Weiner and Clark entered into a written lease agreement to rent the Premises (the "Lease," attached as Exhibit A) for a stated term of March 15, 2020 through March 15, 2021.

10. The Lease provides for a monthly rent of $20,417, due the 15th day of each month.

11. Paragraph 3(a) of the Lease provides that, upon signing the Lease, Tenant shall pay the amount of $20,000 as a security deposit (the "Security Deposit").

12. Paragraph 4(a) provides, in relevant part, "Tenant acknowledges that Tenant has been provided the opportunity to inspect the Premises prior to taking possession. Tenant shall return the Premises at the end of the lease term in the same condition as received, subject only to reasonable wear and tear. Tenant agrees to make no alterations to the Premises, including but not limited to moving within the Premises, or removing to storage, any of Landlord's furniture or furnishings without Landlord's express written consent. Tenant covenants that it

has (a) examined the demised Premises, knows the condition thereof and has accepted same in good order and repair, or (b) elected to enter into this lease agreement without inspecting the property and acknowledges that it has been advised of its right to inspect the Premises by the real estate brokers involved in this transaction."

13. Paragraph 6 provides, in relevant part, "Landlord shall be responsible for all necessary repairs, except when a repair is required as a result of the fault or abuse of Tenant. … In such a case of Tenant's fault or abuse requiring repair to the Premises, such repair shall be paid for by Tenant within ten (10) days of Tenant's receipt of a bill for same from Landlord. Tenant shall immediately notify Landlord or Landlord's agent of any condition requiring repair. No repair or alteration shall be made without written authorization from Landlord."

14. Paragraph 9(b) provides, in relevant part, "Tenant shall also be liable to Landlord for all expenses (including reasonable attorneys' fees), liability, damages and other loss incurred by Landlord arising out of or in connection with Tenant's breach or default under this lease agreement. If Landlord is required to bring any action or proceeding to enforce the terms of this lease agreement and/or to recover for any of Tenant's defaults, Landlord shall be entitled to recover reasonable attorney's fees from Tenant."

15. Paragraph 9(c) provides, in relevant part, that "if Tenant's payment of rent becomes ten (10) days past due, Landlord may charge Tenant a late charge of five percent (5%) of the amount of the past due rent or fifty ($50) dollars, whichever is less."

16. On or about February 24, 2020, Clark wired the $20,000 security deposit to Weiner's personal checking account.

17. Weiner immediately transferred the Security Deposit to a segregated bank account.

3

18. Clark took possession of the Premises as tenant on or about March 15, 2020.

19. In accordance with the Lease, Weiner delivered the Premises in clean condition, furnished as shown to Clark, with all plumbing (including water supply and septic), heating and air conditioning, electrical and mechanical systems, equipment, machinery, and appliances in good working order. Ex. A ¶ 4(a).

20. Weiner also delivered the swimming pool, its heater, and all related pool equipment in good working order, in accordance with Paragraph 26 of the Lease.

21. But, shortly after she took possession of the Premises, Clark repeatedly complained of problems with the Premises that were either non-existent or were caused by Clark herself.

22. For each of the alleged problems, Weiner responded by sending the appropriate service provider to inspect and repair any malfunctioning appliance or fixture.

23. For nearly every alleged problem, the service provider concluded that either (1) the appliance or fixture was in working order or (2) the problem was caused by Clark's abuse or failure to properly follow use instructions.

24. For example, Clark claimed that none of the toilets worked, but the plumber found that they all functioned correctly, including a new toilet installed in March 2020.

25. A plumber had inspected the septic system prior to the beginning of the Lease term and had found it in good working order.

26. Upon information and belief, Clark and her family caused the toilets to clog by overstuffing them with toilet paper. As a result, the septic system backed up and had to be pumped.

27. Upon information and belief, both Weiner's plumber and a plumber hired by Clark explained to her that the toilets on the Premises worked as specified.

28. The Premises has been a rental house since 2015 and is currently occupied by a tenant. Clark is the only tenant to date who has complained about the toilets and septic system.

29. She also claimed that the oven did not work, but the appliance repairman who inspected it found that it did indeed work.

30. She stated that the cable television services were not working, but she had failed to pay the cable bill.

31. She complained that the pool heater was not working, but the pool company found that she had not followed the instructions.

32. She also claimed that the master bedroom blinds did not work, but that claim was also false.

33. Attached as Exhibit B is a list of problems reported by Clark and Weiner's actions to resolve each of them.

34. Weiner emailed this list to Clark on June 22, 2020, but Clark never responded.

35. The pool was opened on or around April 1, 2020.

36. Nearly three months later, on June 22, 2020, Clark reported a leak in the pool to Weiner.

37. Weiner promptly hired a pool company, Beach Hampton Pools, to diagnose the leak problem, which the company did on or about July 5, 2020.

38. The pool leak in no way impacted Clark's ability to use the pool.

39. After first agreeing to a repair on July 18, 2020, Clark canceled that repair at the last minute.

5

40. The pool leak repair began on or about August 1, 2020 and was completed on or about August 10, 2020.

41. Despite Weiner's prompt resolution of Clark's alleged issues, her attorney wrote to Weiner, by letter dated August 3, 2020, attached as Exhibit C, falsely claiming that Weiner could not collect rent because he had (1) violated Southampton's rental permit requirement, (2) failed to advise Clark in writing of the name and address of the bank where her security deposit was held; and (3) impermissibly accepted one month's advance payment of rent and a security deposit.

42. Clark's attorney then offered to forego enforcing her rights if Weiner would agree to abate the rent "until such time as the pool is repaired and is in fully working order; the septic system is repaired so that all of the bathroom toilets work properly and there is no odor from any of the bathrooms; the Tenant has access to the garden; and, any other needed repairs are completed in a timely fashion." Ex. C.

43. Clark's claims that Weiner had violated the law by accepting both the first month's rent and a security deposit were false.

44. New York General Obligations Law ("GOB") § 7-108(1-a)(a) provides, "No deposit or advance shall exceed the amount of one month's rent under such contract."

45. Because neither the Security Deposit nor the first month's rent exceeded the amount of one month's rent under the Lease, its terms did not violate GOL § 7-108.

46. Finally, any violation of Town Code § 270-3 or GOL § 7-103(2) did not result in forfeiture of the Security Deposit or disqualify Weiner from collecting rent under the Lease.

47. As set forth above, Weiner had addressed each of the repairs requested by Clark in her attorney's August 3, 2020 letter.

6

48. Nevertheless, Clark failed to pay rent on August 15, 2020 and thereafter.

49. Clark vacated the Premises on October 11, 2020, with five months still remaining on the Lease.

50. Weiner promptly attempted to minimize his damages by listing the Premises for rent with Sotheby's International Realty, but he was unable to secure another tenant for the remainder of the Lease term.

51. In or around October 2020, Weiner discovered that Clark had converted approximately 1,800 square feet of the lawn to a fenced vegetable garden. She had not requested permission to alter the property as required by the Lease, nor did she restore the garden back to lawn before she vacated.

52. Clark also failed to pay service providers, in violation of Paragraph 2 of the Lease, modified the structure and grounds of the Premises without Weiner's authorization, in violation of Paragraphs 4(a) and 6, and caused extensive damage to the interior walls, furniture, and other household items.

53. In addition, Clark left behind an extremely filthy interior, and the Premises was missing furniture and other household items.

54. By letter dated March 17, 2021, attached as Exhibit D, Weiner notified Clark of her failure to pay rent for seven months, with the total amount in arrears of $142,915. Weiner demanded payment within ten days.

55. Clark did not respond, and to date, she has not paid the balance of the rent due.

56. The entirety of the Security Deposit was expended in paying the amounts owed by Clark to various service providers, reversing the unauthorized modifications to the structure

7

and grounds, repairing the extensive damage to the interior and furniture, replacing missing items, and cleaning the interior of the home.

57. Accordingly, Clark owes Weiner $142,915 in rental arrears plus interest and a late charge of $50 and attorney's fees and costs under the terms of the Lease.

## COUNT I
### Breach of Contract

58. Weiner realleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

59. The Lease constitutes a binding contract.

60. Under the terms of the Lease, Clark owed Weiner $20,417 per month.

61. Weiner duly performed his obligations under the terms of the Lease, delivering a home in clean condition with all plumbing, heating and air conditioning, electrical and mechanical systems, equipment, machinery, and appliances in good working order.

62. Furthermore, Weiner promptly responded to each of Clark's reported issues and fully addressed and repaired any equipment or fixture actually needing repair.

63. Clark, on the other hand, failed to pay monthly rent for seven months, with the total amount in arrears of $142,915.

64. In addition, she failed to pay service providers as required by Paragraph 2 of the Lease, modified the structure and grounds of the Premises without authorization, in violation of Paragraphs 4(a) and 6, and caused extensive damage to the interior walls, furniture, and other household items.

65. As a direct result, Weiner suffered damages in an amount to be determined at trial, including but not limited to $142,915 in unpaid rent, attorney's fees, and various other damages and costs.

**WHEREFORE**, Weiner demands judgment against Clark in an amount to be determined at trial but not less than (1) $142,915 in unpaid rent; (2) pre- and post-judgment interest; (3) a late charge of $50; (4) reasonable attorney's fees; (5) costs and disbursements of this action; and (6) such other relief as the Court deems just and proper.

**JURY DEMAND**:   Weiner demands a jury trial on all issues to be tried.

Dated: Sag Harbor, New York
       July 26, 2021

                                        KRIEGSMAN PC

                                        *s/ Alex Kriegsman*
                                        Alex Kriegsman
                                        Kriegsman PC
                                        *Attorneys for Plaintiff*
                                        279 Main Street
                                        Sag Harbor, NY 11963
                                        (631) 899-4826 (tel.)
                                        (631) 919-5182 (fax)
                                        alex@kriegsmanpc.com